UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

JERSON FABIAN MORENO MENDIETA,

Petitioner,

v.

JASON KNIGHT, Field Office Director of Enforcement and Removal Operations, Salt Lake City Field Office, Immigration and Customs Enforcement; KENNETH PORTER, Director of the Boise U.S. Immigration and Customs Enforcement Field Sub-OFFICE; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; TODD BLANCHE, U.S. Attorney General; MIKE HOLLINSHEAD, Sheriff of Elmore County,

Respondents.

Case No. 1:26-cv-00494-BLW

**MEMORANDUM DECISION AND ORDER**

## INTRODUCTION

Before the Court is a Petition for Writ of Habeas Corpus filed by Petitioner Jerson Fabian Moreno Mendieta ("Mendieta"). Dkt. 1. For the reasons described below, the Court will deny the petition and permit the administrative custody process to proceed because there is no evidence that Mendieta was improperly detained under 8 U.S.C. § 1225(b). Mendieta has also filed a Motion for a

Temporary Restraining Order. Because that motion raises substantially identical arguments as his habeas corpus petition, which is now resolved, the Court will deny the Motion for a Temporary Restraining Order as moot.

## BACKGROUND

Mendieta is a native and citizen of Colombia. Dkt. 1 ¶ 1. He alleges that he fled Colombia because the cartel threatened to kill his grandmother if he and his siblings in the military did not leave the country. *Id*. Mendieta further alleges that he entered the United States on July 14, 2022. *Id*. On July 20, 2022, he was served with a notice to appear before an immigration judge. *Id*. Immigration officials detained Mendieta "for a short period of time" before releasing him on his own recognizance. *Id*. at ¶ 2.

On July 12, 2026, Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") encountered Mendieta at the Canyon County Jail after he was arrested for driving under the influence. Callahan Decl. ¶ 7 (Dkt. 5-1). ERO lodged an immigration detainer with the jail. *Id*.

On July 15, 2026, Mendieta was convicted of misdemeanor driving under the influence and sentenced to 365 days in jail, with 335 suspended, 10 days credited, and to 24 months of unsupervised probation. Dkt. 1 at ¶ 4. This was his

second conviction for driving under the influence since entering the United States in July 2022.[1]

On July 30, 2026, the Ninth Circuit issued its decision in *Rodrigeuz Vazquez v. Bostock,* ___ F. 4th ___, 2026 WL 2196424 (9th Cir. July 30, 2026), holding that unadmitted noncitizens present in the interior of the United State are governed by the discretionary detention framework of 8 U.S.C. § 1226(a), rather than the mandatory detention provisions of 8 U.S.C. § 1225(b)(2)(A).

The Canyon County Jail released Mendieta to ERO on August 3, 2026. Callahan Decl. ¶¶ 7-9 (Dkt. 5-1). Mendieta filed his habeas petition the next day. He is currently housed at the Elmore County Detention Center in Mountain Home, Idaho. *Id*. at ¶ 10.

Jared Callahan, the Supervisory Detention and Deportation Officer for the ICE ERO Salt Lake City Field Office, has stated under oath that, because ERO detained Mendieta after the *Rodriguez Vazquez* decision, it "assessed custody of [Mendieta] under 8 U.S.C. § 1226(a) with an individualized custody determination, finding [Mendieta] a danger to the community due [to] being convicted of two driving under the influence violations in just over a two-year period within 4 years of entering the United States." *Id*. ERO served Mendieta ICE Form I-286, Notice

[1] The Court takes judicial notice of *State of Idaho v. Jerson Fabian Moreno Mendieta*, CR01-24-09639. Mendieta pleaded guilty to violating I.C. § 18-8004(a)(1). Judgment was withheld.

of Custody Determination, on August 8, 2026, and explained to Mendieta his right to request a review of his custody determination by an immigration judge. *Id*. at ¶ 12. Callahan also testifies that the delay in serving Form I-286 was due to "a backlog of ICE cases in Idaho needing to be served [Form I-286]." *Id*. Mendieta requested review by an immigration judge. *Id*.

**LEGAL STANDARD**

A federal court may grant a writ of habeas corpus to a person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). Throughout our nation's history, habeas review "has remained a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Id.*

**ANALYSIS**

This Court has addressed dozens of habeas petitions recently, all relating to the detention provisions of 8 U.S.C. §§ 1226(a) and 1225(b)(2). Before the Ninth Circuit decided *Rodriguez Vazquez*, ___ F. 4th ___, 2026 WL 2196424 (9th Cir. July 30, 2026), the Court repeatedly held that unadmitted noncitizens apprehended in the interior of the United States are governed by 8 U.S.C. § 1226 rather than §

1225(b)(2)(A). The Ninth Circuit reached the same conclusion in *Rodriguez Vazquez,* holding that "aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." *Id.* at *3. A brief summary of this § 1226(a) detention regime follows:

Section 1226(a) "permits (but does not require)" the Government, upon a warrant, to arrest and detain a noncitizen pending removal proceedings and permits release on bond. *Id.* at *10; 8 U.S.C. § 1226(a). DHS makes the initial custody determination, after which a detainee may seek a bond hearing before an Immigration Judge and further review in the Board of Immigration Appeals. *Id.* at *5 (citing 8 C.F.R. §§ 236.1(c)(8), (d)(1), 1236.1(d)(1), (3), 1003.19). "A detainee will be released on bond if he demonstrates by a preponderance of evidence that he is not a flight risk or a danger to the community." *Id.* (citing *Rodriguez Diaz v. Garland,* 53 F.4th 1189, 1197 (9th Cir. 2022)).

Respondents continue to maintain their position that Mendieta is subject to mandatory detention under § 1225(b)(2)(A), but they acknowledge that *Rodriguez Vazquez* controls in the Ninth Circuit. *See* Dkt. 5 at 3.

Under these circumstances, the Court concludes that Mendieta's detention is lawful. Under § 1226(a)'s regulatory framework, the Department of Homeland Security makes the initial custody determination. The governing regulations

provide that a noncitizen seeking release "must demonstrate to the satisfaction of the officer" that release would not pose a danger to property or persons and that the noncitizen is likely to appear for future proceedings. 8 C.F.R. § 236.1(c)(8). If dissatisfied with ICE's decision, the detainee may seek another custody determination before an Immigration Judge. *Id.* § 236.1(d)(1). The Ninth Circuit has described this process as an "individualized custody determination" followed by the opportunity for review before an Immigration Judge. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196–97, 1208 (9th Cir. 2022); *see also Rodriguez Vazquez*, 2026 WL 2196424, at *5–6. Further, 8 U.S.C. § 1226(e) provides that the "discretionary judgment regarding the application of this section shall not be subject to review" and that no court may set aside a decision regarding detention, release, or bond. 8 U.S.C. § 1226(e).

Even setting aside 8 U.S.C. § 1226(e), there is no evidence that ICE did not comply with § 1226(a) in this case. Mendieta was released to ERO on August 3, 2026, and filed his petition the following day. His petition alleges, without evidence, that he was detained under § 1225(b)(2)(A). Dkt. 1. at ¶¶ 11-13, 57, 62; Dkt. 2-1 at 1-10. ICE argues that Mendieta was detained under § 1226(a). Dkt. 5 at 3-4.

Mendieta can "only fathom to guess that [he] remained in detention [under § 1225(b)] until [ICE] made their initial custody determination under § 1226(a). In

either case, [Mendieta was not given his initial custody determination for 5 days." Dkt. 6 at 2. This conjecture does not demonstrate a violation of due process. While there was a five-day gap between Mendieta being taken into ERO custody and being served his Notice of Custody Determination, this Court cannot and will not micromanage an executive agency to such a granular degree as Mendieta implicitly requests in a circumstance such as this, where there is no evidence that ICE is denying Mendieta his due process. Ultimately, Mendieta was taken into custody after *Rodriguez Vazquez*, was given an initial determination under § 1226(a), even if delayed, and will therefore continue through the administrative process as designed.

Mendieta also argues that *Salazar Hernandez v. Leyva et al.*, 1:26-cv-00427-BLW, demonstrates that ICE should have made its initial determination after lodging a detainer and before taking custody of Mendieta. However, in *Salazar Hernandez*, ICE had lodged a detainer in June 2025, when Salazar Hernandez was held in the Canyon County jail pending adjudication of domestic violence charges. *Salazar Hernandez* Dkt. 11 at 2. ICE lifted the detainer in August 2026, during the pendency of Hernandez's state criminal case, and then did not seek to detain him again for nearly a year. *Id*. In Mendieta's case, however, ICE lodged the detainer while he was still in the custody of the Canyon County Sheriff, detained him upon release, and provided him with a notice of custody determination five days later.

Mendieta's argument implicitly requests that the Court usurp the executive branch and direct one of its agencies that is, as the evidence before the Court indicates, complying with the law.

Mendieta also argues that the District of Idaho has released multiple individuals with a similar criminal history under the logic that driving under the influence does not show an obvious danger or flight risk. Dkt. 6 at 3-4. These cases were decided in the context of a detainer under Section 1225(b)—meaning that no individualized determinations had been made. This Court, recognizing the separation of powers between the branches of the federal government, will not substitute its judgment for that of ICE so long as it has complied with the procedure laid out in Section 1226(a).

The evidence here indicates that, in a post-*Rodriguez Vazquez* landscape, ICE has amended its procedures to comply with that case's holding. The fact that five days passed before ICE served Mendieta with a Form I-286 does not demonstrate that ERO constructively detained Mendieta under § 1225(b), nor does it demonstrate that Mendieta's due process rights have been violated.

Mendieta is free to present his arguments concerning his criminal history, community ties, immigration history, and likelihood of appearing to the

Immigration Judge who reviews DHS's custody determination.[2] *See* 8 C.F.R. § 236.1(d)(1); *Rodriguez Diaz*, 53 F.4th at 1196–97. After that, if Mendieta is dissatisfied with the Immigration Judge's determination, he may seek review by the Board of Immigration Appeals. 8 C.F.R. § 236.1(d)(3).

Mendieta suggests that allowing the administrative process to proceed will not provide meaningful relief. Dkt. 6 at 4-5.[3] The Court will not decide that Mendieta's forthcoming bond proceeding would violate federal law or the Constitution before that proceeding has occurred. The statutory process should be permitted to run its course, and if Mendieta is dissatisfied with the Immigration Judge's determination, he may appeal to the Board of Immigration Appeals. 8 C.F.R. § 236.1(d)(3)

The Court recognizes Mendieta's concerns regarding a bond hearing and it shares those concerns. Still, though, this District's experience with the hearings has been mixed over the past several months. In *Garcia Ortiz v. Henkey*, No. 1:26-cv-

---

[2] In his motion for a temporary restraining order, Mendieta states that "the time spent proceeding through such administrative avenues would irreparably injury him due to his ongoing incarceration, as well as his child's worsening medical condition." Dkt. 2-1 at 12. This is the only mention of family in Mendieta's filings. Thus, the Court is unsure if this is part of Mendieta's argument, or if it is an artifact from a different motion.

[3] Mendieta's counsel also asserts that the Tacoma Court is violating Mendieta's access to counsel by denying all requests for remote attorney appearances made on the basis of travel expenses and inconvenience. Dkt. 6 at 4. However, counsel does not provide a substantive legal argument demonstrating that this policy deprives Mendieta of access to counsel. As such, the Court will not attempt to construct the argument itself. *See Indep. Towers of Wa. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).

00043-BLW, this Court ultimately ordered release after concluding that the bond proceeding suffered from significant procedural deficiencies. *See id.,* Dkt. 28. In *Raygoza Vasquez v. Bernacke*, No. 1:26-cv-00299-BLW, however, the Court ordered a bond hearing, the Immigration Judge conducted that hearing, denied bond, and the petitioner raised no challenge to the adequacy of the proceeding. *See id.,* Dkts. 12, 15. Additionally, another judge in this District has recently rejected multiple challenges to the adequacy of bond hearings after examining the proceedings provided. See, e.g., *Ramirez Juarez v. Leyva*, No. 1:26-cv-00249-AKB, Dkt. 12; *Custodio Ixcoy v. Leyva*, No. 1:26-cv-00298-AKB, Dkt. 28; *Perez-Sanchez v. Leyva*, No. 1:26-cv-00393-AKB, Dkt. 24. Given this record, while the Court is indeed concerned regarding the fairness and efficacy of these proceedings, it is not willing to presume, before any hearing occurs, that Mendieta will not receive the individualized review contemplated by § 1226(a).

That said, if Mendieta does not receive the process ordered here, he may file a motion to enforce this Order. Thus, if the Immigration Judge declines to conduct the hearing, refuses to consider Mendieta's evidence, or otherwise fails to provide a genuinely individualized bond hearing, Mendieta may bring that procedural deficiency to the Court's attention. But a motion to enforce may not serve as a de facto appeal from the Immigration Judge's discretionary bond determination. The

Court's role is limited to ensuring that the process ordered here is actually provided.

**ORDER**

For the reasons set forth above, the Petition for Writ of Habeas Corpuse is **DENIED.**

DATED: September 18, 2026

B. Lynn Winmill
U.S. District Court Judge